## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**BRITTANY V.,**[1]

      **Plaintiff,**

                              **Case No. 3:20-cv-14505**

      **v.**                       **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

      **Defendant.**

### <u>OPINION AND ORDER</u>

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Brittany V. for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

## I.      PROCEDURAL HISTORY

On June 30, 2017, Plaintiff protectively filed her application for benefits, alleging that she has been disabled since March 19, 2017. R. 140, 161, 247–52.[3] The application was denied initially and upon reconsideration. R. 177–81, 185–87. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 188–90. Administrative Law Judge ("ALJ") Lisa Hibner Olson held a hearing on July 25, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 56–106. In a decision dated January 9, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 30, 2017, the date on which the application was filed, through the date of that decision. R. 24–45. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on September 1, 2020. R. 2–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On November 3, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 2.[4] On November 4, 2020, the case was reassigned to the undersigned. ECF No. 3. The matter is ripe for disposition.

## II.     LEGAL STANDARD

### A.      Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

---

[3] Plaintiff filed a prior application for benefits on September 27, 2016, but withdrew it, resulting in an order of dismissal on June 8, 2017. R. 120, 173–74, 240–46.

[4] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this
> Court has said, is more than a mere scintilla. It means – and means only – such
> relevant evidence as a reasonable mind might accept as adequate to support a
> conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks

omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal

quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009)

(citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018

WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot

be set aside merely because the Court "acting de novo might have reached a different

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli

v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported

by substantial evidence, we are bound by those findings, even if we would have decided the

factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d

1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic

or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

3

("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict."  *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review."  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected."  *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing

4

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

5

### B.     Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f).

6

If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 26 years old on June 30, 2017, the date on which the application was filed. R. 43. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 27.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: inflammatory arthritis, fibromyalgia, asthma, thyroid gland-all disorders (except malignant neoplasm), depressive, bipolar and related disorders, anxiety, and obsessive-compulsive disorders. R. 27. The ALJ also found that the following diagnosed impairments were not severe: hypertension, gastrointestinal disorders (gastroesophageal reflux disorder, irritable bowel syndrome, gastritis), and right hand fracture/contusion and right wrist ligament rupture/tear status post right wrist/hand surgery in 2017. R. 28–29.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 29–33.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to additional limitations. R. 33–43. The ALJ also found that Plaintiff had no past relevant work.

R. 43.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as a telephone information clerk, an addresser, and a charge account clerk–existed in the national economy and could be performed by Plaintiff. R. 43–44. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 30, 2017, the application date, through the date of the decision. R. 44.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 20; *Plaintiff's Reply Brief*, ECF No. 24. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 23.

## IV.   SUMMARY OF RELEVANT MEDICAL EVIDENCE

On May 8, 2017, Kimberly Polito, PA-C, completed a six-page, check-the-box, and fill-in-the-blank form entitled "Residual Functional Capacity Questionnaire." R. 500–05 (Exhibit 5F) ("the May 2017 opinion"). Ms. Polito diagnosed Plaintiff with fibromyalgia and fatigue based on Plaintiff's "[l]abs, clinical evaluation" and with a fair prognosis. R. 500. Ms. Polito identified the following symptoms: fatigue, weakness, numbness, tingling, increased muscle tension (spasticity), sensitivity to heat, pain, difficulty remembering, depression, and emotional liability. *Id*. She denied that Plaintiff was a malingerer. R. 501. Ms. Polito also denied that Plaintiff had significant and persistent disorganization of motor function in two extremities in sustained

disturbance of gross and dextrous movement or gait and stations or had significant reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of central nervous system known to be pathologically involved by the multiple sclerosis process. *Id.* Ms. Polito answered in the affirmative when asked if Plaintiff complained of a type of fatigue that is best described as lassitude rather than fatigue of motor function, and when asked whether emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations. *Id.* According to Ms. Polito, Plaintiff's impairments (physical impairments plus any emotional impairments) were reasonably consistent with the symptoms and functional limitations described in the evaluation. R. 500–01. Ms. Polito opined that Plaintiff's experience of fatigue or other symptoms were severe enough to interfere with attention and concentration. R. 502. Ms. Polito expected Plaintiff's impairments would last at least twelve months. *Id.* Ms. Polito did not to specify the earliest date on which her description of symptoms and limitations arose. *Id.* Asked to estimate Plaintiff's functional limitations if placed in a competitive work environment, Ms. Polito opined that Plaintiff could walk three city blocks without rest, sit continuously for 20 minutes, stand continuously for 15 minutes, and sit and stand/walk for a total of four hours in an 8-hour day. R. 502–03. Ms. Polito opined that Plaintiff needed a job that permitted shifting positions at will from sitting, standing, or walking, and that she needed to take unscheduled breaks every 45 to 60 minutes for 10 to 15 minutes during an 8-hour workday. R. 503. According to Ms. Polito, Plaintiff should not elevate her legs with prolonged sitting and did not need to use a cane or other assistive device while engaging in occasional standing/walking. *Id.* Plaintiff could occasionally (*i.e.*, less than one-third of the working day) lift and carry up to 10 pounds. *Id.* Ms. Polito denied that Plaintiff had significant limitations in performing repetitive reaching,

handling, or fingering, but that Plaintiff could use both hands to grasp, turn, and twist objects

25% of the time in an eight-hour workday; use her fingers for fine manipulations 25% of the

time in an eight-hour workday; and use both arms for reaching, including overhead, 10% of the

time in an eight-hour workday. R. 503–04. Plaintiff could bend and twist at the waist 15% of the

time during an eight-hour workday. R. 504. Ms. Polito opined that Plaintiff should avoid

concentrated exposure to extreme cold; extreme heat; high humidity; fumes, odors, dusts, gases;

and cigarette smoke; and she should avoid even moderate exposure to solvents/cleaners and

chemicals; but Plaintiff had no restriction to her exposure to perfumes. *Id*. Ms. Polito also opined

that Plaintiff's impairments were likely to produce "good days" and "bad days" and that, on

average, Plaintiff would likely be absent from work as a result of her impairments or treatment

more than three times a month. *Id*.

On August 11, 2017, Ms. Polito completed a three-page, check-the-box, and fill-in-the-

blank form entitled, "General Medical Report," which Hiram El Kadi, M.D., Plaintiff's treating

physician, also signed. R. 507–09 (Exhibit 6F/2–4).[5] They indicated that they examined Plaintiff

every one to two months beginning on March 11, 2016, and most recently had examined her on

August 11, 2017. R. 507. They indicated that Plaintiff has a history of generalized myalgias,

fatigue, thyroid dysfunction, and a history of wrist pain with surgical repair. *Id*. Plaintiff has

tender points of the cervical region, elbows, knees, and lower back, but with no joint swelling,

nodules, tophi, or rash. *Id*. An antinuclear antibodies ("ANA") test dated January 21, 2016, was

---

[5] The first page of the form has a pre-printed date of July 21, 2017, R. 507, but the signature block reflects a date of August 11, 2017, R. 509. The ALJ mistakenly refers to this report as having been dated October 2017. R. 40. The ALJ's citation to the "General Medical Report" also includes a three-page, check-the-box, and fill-in-the-blank form entitled, "Passive Range of Motion Chart," R. 510–12 (6F/5–7), which is signed by only Ms. Polito. R. 40 (referring to "General Medical Report" "at Exhibit 6F/2–7"). The Court details this chart next.

positive (1:40 titer) and a thyroid-stimulating hormone ("TSH") blood test revealed a level of less than 0.01. *Id.* Dr. El Kadi and Ms. Polito diagnosed Plaintiff with fibromyalgia syndrome, Hashimoto's thyroiditis, and fatigue. *Id.* They opined that Plaintiff could occasionally (up to one-third of a workday) lift and carry up to 15 pounds; stand and/or walk up to 6 hours per day; and sit up to 8 hours per day; she had no limitation in her ability to push and/or pull, handle objects, hear, speak, or travel. R. 508. Asked whether there were any other conditions that limited Plaintiff's ability to do work-related activities, Dr. El Kadi and Ms. Polito responded in the affirmative, stating, "[f]atigue and memory loss, difficulty with organizational skills[.]" R. 508.

Also on August 11, 2017, Ms. Polito completed a three-page, check-the-box, and fill-in-the-blank form entitled, "Passive Range of Motion Chart." R. 510–12 (6F/5–7) (collectively, with the General Medical Chart, "the August 2017 opinion"). She opined as follows:

**Shoulder**

| | | | | |
|---|---|---|---|---|
| A. | Forward Elevation (0-150) Right <u>150</u>   Left <u>150</u> | B. Abduction (0-150) Right <u>140</u>  Left <u>140</u> | C. Adduction (0-30) Right <u>30</u>      Left <u>30</u> |
| D. | Internal Rotation (0-80) Right<u>80</u>        Left <u>80</u> | E. External Rotation (0-90) Right <u>80</u>   Left <u>80</u> | |

**Elbow**

| | | | |
|---|---|---|---|
| A. | Flexion-Extension (0-150) Right <u>150</u>   Left <u>150</u> | B.  Suplination (0-80) Right <u>80</u>  Left <u>80</u> | C.  Pronation (0-80) Right <u>80</u>  Left <u>80</u> |

**Wrist**

| | | | |
|---|---|---|---|
| A. | Dorsi-flexion (0-60) Right <u>50</u>       Left <u>60</u> | B.  Palmar Flexion (0-60) Right <u>30</u>  Left <u>60</u> | C.  Radial Deviation (0-20) Right <u>15</u>  Left <u>20</u> |
| D. | Ulnar Deviation (0-30) Right <u>20</u>       Left <u>30</u> | | |

**Knee**

A.       Flexion-Extension (0-150)

Right <u>150</u>     Left <u>150</u>

**Hip**

A.    Forward Flexion (0-100)     B.  Backward Extension (0-30)     C.  Abduction (0-40)
       Right <u>100</u>     Left <u>100</u>        Right <u>30</u>   Left <u>30</u>        Right <u>40</u>   Left <u>40</u>

D.    Rotation Interior (0-40)     E.  Rotation Exterior (0-50)     F.  Adduction (0-20)
       Right <u>40</u>        Left <u>40</u>        Right <u>50</u>     Left <u>50</u>        Right <u>20</u>   Left <u>20</u>

**Ankle**

A.    Dorsi-flexion (0-20)         B.  Plantar Flexion (0-40)
       Right <u>20</u>        Left <u>20</u>        Right <u>40</u>   Left <u>40</u>

**Cervical Spine**

A.    Lateral Flexion (0-45)       B.  Flexion (0-50)               C.  Extension (0-60)
       Right <u>45</u>        Left <u>45</u>        Right <u>50</u>   Left <u>50</u>        Right <u>50</u>   Left <u>50</u>

D.    Rotation (0-80)
       Right <u>80</u>        Left <u>80</u>

**Lumbar Spine**

A.    Flexion-Extension (0-90)              B.  Lateral Flexion (0-25)
       <u>90</u>                                  Right <u>20</u>        Left <u>20</u>
Straight Leg Raising Test (0-90)
A.    Supine:           Right <u>90</u>        Left <u>90</u>
B.    Sitting:          Right <u>90</u>        Left <u>90</u>

R. 510–11.

Asked whether Plaintiff's hands could be fully extended and make a fist, and if her

fingers could be opposed, Ms. Polito responded in the affirmative. R. 510. She also noted that

Plaintiff had 5/5 bilateral grip strength and pinch strength. *Id*. Ms. Polito also opined that

Plaintiff could separate papers and button buttons. *Id*. Plaintiff could squat, walk on heels and

toes, and had no sensory or reflex loss on her left or right side. R. 511. Plaintiff had normal

bilateral extremities and muscle strength. *Id*. Plaintiff could walk at a reasonable pace and did

not use a hand-held assistive device. *Id*. Asked whether Plaintiff had an other limitations, Ms.

12

Polito responded in the affirmative, stating as follows: "Pt suffers from subjective complaints of fatigue, generalized muscle pain and memory loss. These symptoms make daily tasks difficult for her. She also has difficulty with organizational tasks (scheduling, appointments etc.)[.]" R. 512.

On September 18, 2019, Ms. Polito completed a one-page, check-the-box, and fill-in-the-blank form entitled, "Fibromyalgia Trigger Point Chart." R. 1170 (Exhibit 26F/3). Ms. Polito identified twelve positive trigger points. *Id*. She indicated that Plaintiff has been a patient since 2016 and that, in Ms. Polito's professional opinion, the onset of Plaintiff's condition had been more than five years earlier. *Id*.

On the same day, Ms. Polito also completed a six-page, check-the-box, and fill-in-the-blank form entitled, "Fibromyalgia Residual Functional Capacity Questionnaire." R. 1171–76 (Exhibit 26F/4–9) (collectively, with the 2019 trigger point chart, "the September 2019 opinion"). Ms. Polito indicated that she had treated Plaintiff every three to six months since March 11, 2016, most recently on September 12, 2019. R. 1171. She diagnosed Plaintiff with fibromyalgia, affirming that Plaintiff met the criteria for this condition, and identifying positive trigger points and tenderness in Plaintiff's hands. *Id*. She also indicated that Plaintiff suffered from Hashimoto's thyroiditis. *Id*. According to Ms. Polito, Plaintiff's impairments have lasted or were expected to last for twelve months and her prognosis was "[f]air; condition is chronic[.]" *Id*. Ms. Polito identified Plaintiff's symptoms as follows: multiple trigger points; nonrestorative sleep; chronic fatigue; anxiety; and hypothyroidism. R. 1172. She denied that Plaintiff was a malingerer and responded in the affirmative when asked if emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations. *Id*. Ms. Polito commented that Plaintiff suffered pain in her lumbosacral and cervical spine, and in her hands/fingers. *Id*. Asked

13

to describe the nature, frequency, and severity of Plaintiff's pain, Ms. Polito responded: "Daily muscle pain; intermittent/daily pain in hands[.]" R. 1173. According to Ms. Polito, changing weather, fatigue, movement/overuse, and stress precipitated Plaintiff's pain. *Id*. Ms. Polito answered in the affirmative when asked whether Plaintiff's impairments (physical impairments plus any emotional impairments) were reasonably consistent with the symptoms and functional limitations in the evaluation. *Id*. Ms. Polito opined that Plaintiff's experience of symptoms were severe enough to frequently interfere with attention and concentration and that Plaintiff was moderately limited in her ability to deal with work stress. *Id*. Ms. Polito responded "N/A at this time" when asked to identify any side effects from medication that may have implications for working. *Id*. Ms. Polito estimated that, in a competitive work environment, Plaintiff could walk three city blocks without rest; continuously sit for 30 minutes at one time; continuously stand for 20 minutes at one time; and could sit and stand/walk for a total of about 4 hours total in an eight-hour workday. R. 1173–74. Ms. Polito opined that Plaintiff needed to include periods of walking around for ten minutes every 45 minutes during an eight-hour workday and that Plaintiff needed a job that permits shifting positions at will from sitting, standing, or walking. R. 1174. Plaintiff also needed to take unscheduled breaks lasting 10 minutes every one to two hours. R. 1174–75. Ms. Polito denied that Plaintiff's legs needed to be elevated with prolonged sitting and denied that Plaintiff needed a cane or assistive device when engaging in occasional standing/walking. R. 1175. Ms. Polito opined that Plaintiff could occasionally (*i.e.*, less than one-third of the workday) lift and carry up to 20 pounds in a competitive work situation. *Id*. Ms. Polito denied that Plaintiff had significant limitations in performing repetitive reaching, handling, or fingering. *Id*. Plaintiff could bend and twist at the waist 10% of the time during an eight-hour workday. R. 1175–76. According to Ms. Polito, Plaintiff's impairments were likely to produce "good days" and "bad

14

days" and opined that Plaintiff was likely to be absent from work about three times a month as a result of her impairments or treatment. R. 1176.

## V.    DISCUSSION

### A.    RFC and Opinion Evidence

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination because the ALJ failed to properly consider the opinions of Dr. El Kadi and Ms. Polito. *Plaintiff's Brief*, ECF No. 20, pp. 13–24; *Plaintiff's Reply Brief*, ECF No. 24, PAGEID## 1290–93.[6] Plaintiff also argues that the ALJ's RFC did not account for all of Plaintiff's mental limitations. *Plaintiff's Brief*, ECF No. 20, pp. 24–28; *Plaintiff's Reply Brief*, ECF No. 24, PAGEID## 1293–94. Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 416.945(a)(1). At the administrative hearing stage, it is the administrative law judge who is charged with determining the claimant's RFC. 20 C.F.R. § 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence,

---

[6] Because the page numbers appearing at the bottom of *Plaintiff's Reply Brief* appear misnumbered and are confusing, the Court refers to the PAGEID number appearing at the top right-side of each page. *See* PAGEID## 1290–92 (reflecting the page numbers "2," "1," "2," respectively, at the bottom of each page).

but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In addition, the ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari,* 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter,* 642 F.2d at 705).

For claims, like Plaintiff's, filed after March 27, 2017,[7] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 416.927 *with* 20 C.F.R. § 416.920c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the

---

[7] As previously noted, Plaintiff's claim was filed on June 30, 2017.

claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 416.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 416.920c(c)(1).  As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 416.920c(c)(2).

The applicable regulations further require the ALJ to articulate his or her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 416.920c(b).

"Specifically, the ALJ must explain how he [or she] considered the 'supportability' and 'consistency' factors for a medical source's opinion. . . . The ALJ may—but is not required to—explain how he [or she] considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec.*, No. 1:19-CV-01567, 2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of sedentary work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except: Occasionally climb ramps or stairs. Occasionally climb ladders, ropes or scaffolds. Occasionally balance, stoop, kneel, crouch and crawl. No exposure to workplace hazards such as moving machinery or unprotected heights. Avoid concentrated exposure to: extreme heat or cold, wetness or humidity, irritants such as fumes, odors, dust and gases, poorly ventilated areas, exposure to chemicals. Frequent overhead reach.

R. 33. In making this determination, the ALJ detailed years of record evidence regarding Plaintiff's physical and mental impairments. R. 34–43. For example, as to her physical impairments, the ALJ specifically considered that Plaintiff had received generally conservative care in the form of medication, inhalers, injections, wrist and back braces, outpatient office visits, and although Plaintiff had also presented to the emergency room, those visits were sporadic and resulted in discharges in improved or stable condition with discharge on the same day or no later than two days after presentation; generally normal, with only minimal, examination findings, including, *inter alia*, normal ranges of motion (spinal, extremities), intact cranial nerves, intact reflexes, intact coordination, and/or no noted abnormal Romberg testing, without any noted assistive device use, atrophy, edema, swelling, joint instability, joint laxity, or deformity, normal strength, normal handgrip strength, intact sensation, a normal gait, the ability to make fists, oppose fingers, button buttons or heel-toe walk, and/or no noted motor, strength,

sensory, arm/hand use, or gait deficit or abnormality. R. 34–37. The ALJ went on to explain her

consideration of this evidence when crafting the RFC, as follows:

> Therefore, this evidence, including objective findings, course of treatment, and the claimant's actions and admissions fully supports the exertional, postural, overhead reaching, fingering, handling, and exposure to workplace hazards, extreme heat/cold, wetness, humidity, and pulmonary irritant exposure limitations in the assessed residual functional capacity. Further, this evidence, and the evidence set forth in the Finding Two discussion, does not support the assessment of different or additional limitations. Additionally, the undersigned accounted for the claimant's non-severe impairments, subjective allegations (including, but not limited to, pain) and alleged medication side effects, as well as for the waxing and waning of fibromyalgia symptoms, when making this assessment.

R. 37.

In making this RFC determination, the ALJ also considered years of record evidence

regarding Plaintiff's mental impairments, including, *inter alia*, a conservative course of mental

health treatment consisting of outpatient talk therapy in 2017 and medication, without any

psychiatric hospitalizations or participation in any intensive outpatient or partial hospitalization

programs, or ongoing, consistent course of outpatient talk therapy even at a free or community

clinic; generally normal, with only minimal, findings, including, *inter alia*, a

psychological consultative exam in 2017 which revealed that, although Plaintiff could recall only

one of three items after a delay and was not able to perform serial sevens or simple

multiplication or division, the exam otherwise revealed that she was fully oriented, related well

to the examiner, had no difficulty participating in the exam, and had a normal mood, a normal

affect, normal eye contact, normal speech, and normal psychomotor activity and that she was an

adequate historian, attentive, and had no problems with completing a basic information form or

following the topic of conversation, and demonstrated low average intelligence (as opposed to a

lower level), a normal stream of conversation, and adequate insight and judgment, with no

evidence of delusions, hallucinations, obsessions, compulsions, and suicidal or homicidal

ideation; Plaintiff was able to perform simple addition and subtraction, recall personal historical information, recall three of three objects immediately, identify the current and former presidents, provide adequate responses in proverb interpretation, repeat seven digits forward and four digits in reverse in digit span testing, and perform serial threes; while other records documented finding of depressed mood, those records did not reveal abnormal objective mental status exam findings but, rather, otherwise noted that the claimant was pleasant and cooperative without any noted abnormal, objective mental status exam findings; and the treatment records of non-mental health specialists, collectively dated from 2012 to 2019, merely documented only sporadic exam findings of pain distress. R. 37–38. The ALJ also went on to explain her consideration of this evidence when crafting the RFC, as follows:

> Therefore, this evidence, including objective findings, course of treatment, and the claimant's actions and admissions fully supports the mental limitations in the assessed residual functional capacity. Further, this evidence, and the evidence set forth in the Finding Two discussion, does not support the assessment of different or additional limitations. Moreover, the undersigned accounted for the undersigned's "moderate" paragraph B findings when making this assessment. (Specifically, the residual functional capacity provides for only simple routine tasks as opposed to a higher task level in terms of understanding, remembering or applying information. Further, the limit to simple, routine tasks would result in the claimant having to concentrate, perform, or persist on a given task for shorter periods, as compared with the time required for tasks at a greater level of complexity in terms of concentrating, persisting or maintaining pace. Moreover, there would be less variables involved in simple, routine tasks that would require adaption, as compared with tasks at a greater level of complexity, in terms of adapting or managing oneself). Additionally, the undersigned accounted for the claimant's fibromyalgia, subjective allegations (including, but not limited to, pain), and alleged medication side effects, as well as for the waxing and waning of fibromyalgia symptoms, when making this assessment.

R. 38.

In crafting the RFC determination, the ALJ also considered opinion evidence, including the opinions of, *inter alios*, Dr. El Kadi and Ms. Polito, explaining as follows:

20

Further, treating provider, Kimberly Polito, PA-C issued several opinions. Specifically, PA-C, Polito opined, in a "Residual Functional Capacity Questionnaire" dated from May 2017 at Exhibit 5F - The claimant could occasionally lift/carry up to 10 pounds. She could walk three blocks without rest, sit for 20 minutes at one time and for a total of about four of eight hours, stand for 15 minutes at one time, and stand/walk for a total of about four of eight hours. She requires a sit-stand-walk option and unscheduled breaks. She could, for 25 percent of the day, grasp, turn and twist objects and perform fine manipulations, and, for 10 percent of the day, reach. She could bend and twist 15 percent of the day. She should avoid concentrated exposure to extreme cold, extreme heat, high humidity, fumes, odors, dusts, gases, and cigarette smoke, and avoid even moderate exposure to solvents, cleans, and chemicals. Her fatigue and other symptoms are severe enough to interfere with attention and concertation constantly. She has a marked limitation in terms of her ability to tolerate work stress. Finally, she would be absent more than three times month. (Exhibit 5F).

Thereafter, she and treating provider, Dr. Hisham El-Kadi, M.D., opined, in a "General Medical Report" dated from October 2017 at Exhibit 6F/2-7 - The claimant could lift and carry 15 pounds, stand and/or walk up to six hours per day, and sit up to eight hours per day. Further, pain, fatigue, memory loss, and difficulty with organizational skills would cause work-related limitations as well (Exhibit 6F/2-7).

Subsequently, PA-C Polito opined, in a "Fibromyalgia Residual Functional Capacity Questionnaire" dated from September 2019 at Exhibit 26F - The claimant could occasionally lift/carry up to 20 pounds. She could walk three blocks without rest, sit for 30 minutes at one time and for a total of about four of eight hours, stand for 20 minutes at one time, and stand/walk for a total of about four of eight hours. She requires a sit-stand-walk option and unscheduled breaks. She could bend and twist 10 percent of the day. Her experience of symptoms are severe enough to interfere with attention and concentration frequently. She has a moderate limitation in terms of her ability to tolerate work stress. Finally, she would be absent more than three times month. (Exhibit 26F).

These three opinions contain notations of diagnoses and subjective allegations, with the opinions at Exhibits 6F/2-7 and 26F additionally including notations of objective findings, all of which presumably are the support for these opinions. However, these three opinions are inconsistent with one another in terms of lifting and carrying, and there is inconsistency between the opinion at Exhibit 6F/2-7 and the other two opinions at Exhibits 5F and 26F in terms of sitting, standing, and walking. Further, the opinions at Exhibits 5F and 26F are vague in terms of attention, concertation, and stress tolerance, and the opinion at Exhibit 6F/2-7 is vague in terms of pain, fatigue, memory loss, and difficulty with organizational skills.

21

Moreover, the record reveals that that claimant was more limited than opined at Exhibits 6F/2-7 and 26F in terms of lifting/carrying and more limited than opined in Exhibit 6F/2-7 in terms of total sitting and standing/walking times in an eight-hour day. In contrast, the opinion at Exhibit 5F generally providing for the limitations of avoiding concentrated exposure to extreme cold, extreme heat, high humidity, and pulmonary irritants is generally consistent with the record. For example, the Arthritis records, where PA-C Polito and Dr. El-Kadi practice, document multiple exam findings of tender points (Exhibits 6F/10, 14, 17, 21, 25, 30, 34, 38; 15F/9, 13; 16F/15, 73, 77; 27F/1). Those records also document multiple exam findings of subjective neck, spinal, or extremity-joint area tenderness or discomfort (Exhibits 6F/10, 13, 14, 17, 18, 21, 22, 25, 26, 29, 30, 34, 38; 15F/4, 9, 13; 16F/7, 11, 14, 15, 19, 68, 73, 77, 81). Further, the Barnabas records document exam findings of wheezes (Exhibit 18F/3, 7, 117).

However, the record failed to reveal that the claimant was as limited as otherwise opined in these three opinions. For example, the Arthritis records additionally document only sporadic exam findings of pain distress (Exhibit 16F/76, 81), spinal area spasm (Exhibits 6F/29; 16F/76, 81), "weak" hand grips (Exhibit 15F/8), and limited ranges of lumbar spinal, bilateral shoulder or right wrist motion (Exhibit 6F/5, 6; 15F/4, 9). In fact, the Arthritis records otherwise failed to reveal, upon exam, any noted assistive device use, atrophy, edema, swelling, joint instability, joint laxity, deformity, or deficits in terms of alertness, mental status, motor function, strength, sensation, arm/hand use, or gait (Exhibits 6F; 15F; 16F).

Therefore, in light of the above, the opinions at Exhibits 5F has limited persuasiveness, and the opinions at Exhibits 6F/2-7 and 26F are not persuasive.

R. 40–41. The Court finds no error in the ALJ's evaluations in this regard. *See* 20 C.F.R. § 416.920c(c)(1) (addressing the supportability factor when considering medical opinions); *id.* at § 416.920c(c)(2) (addressing the consistency factor when considering medical opinions); *Crossley v. Kijakazi*, No. 3:20-CV-02298, 2021 WL 6197783, at *11 (M.D. Pa. Dec. 31, 2021) (finding that the ALJ properly evaluated opinions regarding exertional limitations where the ALJ considered, *inter alia*, physical examinations that routinely noted the claimant to have normal range of motion, no tenderness, normal strength, no tremor, no cranial nerve deficit, and normal gait and coordination); *Aponte v. Kijakazi*, No. CV 20-5008, 2021 WL 4963545, at *7 (E.D. Pa. Oct. 25, 2021) (finding that substantial evidence supported the ALJ's finding that a treating opinion was not persuasive under 20 C.F.R. § 404.1520c because it was inconsistent with, *inter*

*alia*, mild findings on "multiple physical examinations" and mild radiographic findings);

*Debevits v. Saul*, No. CV 20-600, 2021 WL 2590140, at *4 (W.D. Pa. June 24, 2021) (finding

that the ALJ "appropriately assessed Dr. Kellis' medical opinion in light of these standards"

under 20 C.F.R. §§ 404.1520c, 416.920c where the ALJ concluded that a physician's opinion

was not persuasive because "the limitations espoused [by the physician] were not consistent with

or supported by other evidence of record" such as, *inter alia*, the treatment records, for instance,

indicated a greater ability to walk, lift, and stand"); *cf. Cosme v. Comm'r Soc. Sec.*, 845 F. App'x

128, 134 (3d Cir. 2021) ("Prior to making his determination regarding Cosme's RFC, the ALJ

reviewed the evidence in the record as he discussed Cosme's physical and mental abilities and

explained the evidence he relied upon in reaching his decision and the weight accorded to it.

Therefore, there is substantial evidence that the ALJ properly considered Cosme's physical and

mental abilities in a function-by-function assessment prior to his RFC determination.").

Plaintiff, however, challenges the consideration of the opinions of Dr. El Kadi and Ms.

Polito, and associated RFC limitations, on a number of bases. Plaintiff first complains that, while

the ALJ focuses on alleged inconsistencies in the opined exertional limitations, "it is the

*nonexertional limitations*, which are actually consistent, as set forth in these opinions which are

key and which, if accepted, would preclude the performance of sustained work activities."

*Plaintiff's Brief*, ECF No. 20, p. 19 (emphasis in the original); *see also id*. at 19–21 (detailing

consistencies between nonexertional limitations contained in the May 2017 opinion and the

September 2019 opinion); *Plaintiff's Reply Brief*, ECF No. 24, PAGEID ##1291–92. Plaintiff

specifically cites to vocational expert testimony that being off task 10% of the time or being

absent two or more days per month would preclude competitive employment. *Plaintiff's Brief*,

ECF No. 20, p. 21 (citing R. 93–94).

Plaintiff's arguments are not well taken. When considering the opinions of Dr. El Kadi and Ms. Polito, the ALJ explained that she discounted these opinions because they were inconsistent with each other in terms of lifting and carrying, sitting, standing, and walking. R. 41. She also explained that the May 2017 and September 2019 opinions were "vague in terms of attention, concentration, and stress tolerance" and that the August 2017 opinion was "vague in terms of pain, fatigue, memory loss, and difficulty with organizational skills." R. 41. The ALJ also explained—explicitly—that these opinions were not supported because " the record failed to reveal that the claimant was as limited as otherwise opined [other than the limitations related to lifting/carrying, sitting, standing/walking, and environmental limitations addressed in the prior paragraph] in these three opinions[,]" noting "only sporadic exam findings of pain distress[,]" "spinal area spasm[,]" "weak" hand grips[,]" and that records "failed to reveal, upon exam, any noted assistive device use, atrophy, edema, swelling, joint instability, joint laxity, deformity, or deficits in terms of alertness, mental status, motor function, strength, sensation, arm/hand use, or gait[.]" R. 41. In addition, as set forth in more detail above, the ALJ explained why Plaintiff's physical and mental impairments did not require greater or different limitations in the RFC determination, expressly stating that she had accounted for Plaintiff's "non-severe impairments, subjective allegations (including, but not limited to, pain) and alleged medication side effects, as well as for the waxing and waning of fibromyalgia symptoms[,]" R. 37; *see also* R. 34–37 (noting the conservative course of care of Plaintiff's physical impairments and "generally normal, with only minimal, findings"), 37–38 (same as to Plaintiff's mental impairments). In short, the ALJ's discussion in this regard provides substantial evidence to support the ALJ's consideration of the opinions of Dr. El Kadi and Ms. Polito and associated RFC limitations. *See*

24

20 C.F.R. § 416.920c(c)(1), (2); *Crossley*, 2021 WL 6197783, at *11; *Aponte*, 2021 WL
4963545, at *7; *Debevits*, 2021 WL 2590140, at *4; *cf. Cosme*, 845 F. App'x at 134.

Plaintiff also complains that the ALJ erroneously characterized the May 2017 and
September 2019 opinions as "'vague in terms of attention, concentration, and stress tolerance'"
and the August 2017 opinion as "'vague in terms of pain, fatigue, memory loss, and difficulty
with organizational skills.'" *Plaintiff's Brief*, ECF No. 20, pp. 22–23 (quoting R. 41). Even
assuming, for present purposes only, that the ALJ erred in discounting these opinions as vague,
this factor was but one of several factors that the ALJ provided when discounting such opinions,
as previously discussed. R. 41 (discounting opinions where the ALJ noted, *inter alia*, the records
"failed to reveal, upon exam, any . . . deficits in terms of alertness, mental status"), *see also* R.
37–39 (detailing the generally conservative care for mental impairments and the generally
normal or minimal examination findings and explaining, *inter alia*, how the RFC accounts for
Plaintiff's moderate limitations in the paragraph B criteria areas of understanding, remembering,
or applying information; concentrating, persisting, or maintaining pace; and adapting or
managing oneself), 42 (noting, *inter alia*, that Plaintiff's "ability to manage funds is generally
consistent with the ability to perform simple, routine tasks, which, in turn, is generally consistent
with the record").

Plaintiff nevertheless insists that, if these opinions were truly vague, the ALJ should have
recontacted Dr. El Kadi and Ms. Polito for clarification. *Plaintiff's Brief*, ECF No. 20, pp. 23–24
(citing SSR 85-16 and *Sheryl W. v. Comm'r of Soc. Sec.* No. 19-cv-19127, 2020 WL 7258623, at
*7 (D. N.J. Dec. 10, 2020)). This Court disagrees. "First, as this Court has previously recognized,
'recontacting a medical source is now discretionary.'" *Norabeth D. v. Kijakazi*, No. 1:21-CV-
12874, 2022 WL 2952913, at *6 (D.N.J. July 26, 2022) (quoting *Sheryl W.*, 2020 WL 7258623,

at *7) (cleaned up). An ALJ is required only to "recontact the medical source when the evidence received from the medical source is inadequate to determine whether or not the claimant is disabled, not because the ALJ finds the doctor's opinion inconsistent with the claimant's medical records." *Gladden o/b/o Hyman-Self v. Berryhill*, 2018 WL 1123763, at *6 (E.D. Pa. Feb. 28, 2018) (internal quotation marks omitted) (quoting *Kelly v. Colvin, C.A.* No. 09-759-RGA-SRF, 2013 WL 5273814, at *16 (D. Del. Sept. 18, 2013)); *see also* SSR 85-16, 1985 WL 56855, at *3 ("When medical source notes appear to be *incomplete*, recontact with the source should be made to attempt to obtain more detailed information. . . . [W]hen the reports from these sources [treating or nontreating sources] *appear to be incomplete*, the source should be recontacted to clarify the issues.") (emphasis added); *Vargas v. Berryhill*, No. 3:16-CV-02003, 2018 WL 1938312, at *7 (M.D. Pa. Mar. 13, 2018), *report and recommendation adopted*, No. 3:16-CV-2003, 2018 WL 1932879 (M.D. Pa. Apr. 24, 2018) ("When an ALJ does not express 'confusion' about a treating source statement, but, instead, concludes that it lacks proper support, there is no reason to recontact the physician.") (citations omitted). Notably, "[t]here is no obligation to recontact a medical source when the ALJ finds that the record as a whole provides an adequate basis to determine whether the claimant is disabled." *Gladden o/b/o Hyman-Self v. Berryhill*, 2018 WL 1123763, at *6. As detailed above, the ALJ considered the objective medical evidence and implicitly determined that she had sufficient information from the record as a whole to assess the opinions of Dr. El Kadi and Ms. Polito and, notably, to reach a conclusion. Under the circumstances presented in this case, the ALJ was not required to recontact Dr. El Kadi or Ms. Polito.

In continuing to challenge the ALJ's consideration of the opinions of Dr. El Kadi and Ms. Polito, Plaintiff also apparently criticizes the ALJ's consideration of the exertional limitations

contained in these opinions, insisting that these opined exertional limitations were consistent. *Plaintiff's Brief*, ECF No. 20, pp. 21–22 (citations omitted). However, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Messina v. Comm'r of Soc. Sec.*, No. 20-1884, 2021 WL 422444, at *3 (3d Cir. Feb. 8, 2021) ("Yet we cannot reweigh the evidence or make our own factual determinations."); *Chandler*, 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard].."); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . .  [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

Plaintiff also argues that the ALJ's limitation to simple, routine tasks does not accommodate Plaintiff's moderate mental limitations in the areas of understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Plaintiff's Brief*, ECF No. 20, pp. 25–27. This Court disagrees. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 208–14 (3d Cir. 2019) (finding that a "simple tasks" limitation can be said to fairly reflect a claimant's "moderate" difficulties in concentration, persistence, or pace where there is a "valid explanation" for such limitation); *Menkes v. Astrue*, 262 F. App'x 410, 412–13 (3d Cir. 2008) ("The term 'simple routine tasks,' in the context of the disability proceedings, generally refers to the non-exertional or mental aspects of work. For example, performing a 'simple routine task' typically involves low stress level work that does not require maintaining sustained concentration."). Moreover, the ALJ sufficiently

explained this limitation in the RFC. *See* R. 38 (explaining that "the limit to simple, routine tasks would result in the claimant having to concentrate, perform, or persist on a given task for shorter periods, as compared with the time required for tasks at a greater level of complexity in terms of concentrating, persisting or maintaining pace. Moreover, there would be less variables involved in simple, routine tasks that would require adaption, as compared with tasks at a greater level of complexity, in terms of adapting or managing oneself").

Plaintiff asserts that the ALJ did not properly account for these moderate mental limitations where the reviewing state agency physician, James Conneran, M.D.,[8] identified moderate limitations in the specific areas of maintaining attention/concentration for extended periods, and in completing a normal workday and workweek without psychologically based interruptions and performing at a consistent pace without an unreasonable number and length of rest periods and found that Plaintiff "could only perform simple, routine work 'within the limitations specified above' and could perform certain functions with difficulty." *Plaintiff's Brief*, ECF No. 20, p. 27 (citing R. 155, 157).

Plaintiff's argument does not militate a different result. In reviewing the record upon reconsideration for the state agency on January 16, 2018, Dr. Conneran opined, *inter alia*, that Plaintiff was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 155. Asked to explain this limitation in narrative form, Dr. Conneran referred to his additional discussion of the mental RFC. *Id*. In that discussion, Dr. Conneran stated as follows:

> Clmt is a 26 y.o. female in a T 16 recon w psych allegs of MOD & anxiety. Physical
> allegs: ves disease & other thyroid disorders, Hashimoto's D/O, Fibromyalgia,

---

[8] Dr. Conneran's title appears on R. 161.

Sero-negative arthritis, and asthma. MER from R Kay, PhD following MVA in 2015 clmt lost her father in 2015, and was involved in MVA 6/2016 when she sustained wrist injury requiring surgery. Dr Kay's dx: GAD. Dr K prov Tx 3/2017 to 9/2017, that appears ongoing, focusing on depress and anx in context of chron pain. CE MSE (9/14/2017) notes nml mood, approp affect; able to do ser 3s & simple add /subtr calcs, unable to do mult /div calcs. Recalled 1 / 3 adj /obj pairs after delay; intell funct estim low-avg range per presentn. Dxs: psychological factors affecting other medical conditions (chronic pain); specific phobia situational. Competent to manage funds. ADLs note limits mostly d/t pain, weakness, and fatigue, which reduces hygiene/ grooming tasks (needs assistance), meal prep (none), and HH chores (none). Clmt can drive short dists but is lim by pain, fatigue and weakness; shops online for food and necessities, and manages her own funds. Hobbies are reading and TV. Social functioning is at home with family. Attention span is "brief" (no further elaboration). She manages written/spoken instruction poorly d/t memory loss. She has no problems with authority figures. Manages stress/changes poorly. At initial level, psych review found the record supported presence of anx & depress that did not meet /equal listing, with moderate limits in all B-Criteria.

At recon, clmt assert MDD & anx d/os, w severe mem loss that began in 2017. 12/06/2017 SOMC Dr Terranova mental status found mem/calcs intact; clmt was A & Ox3, scored 26 of 30 on MM status exam; impression: minimal cogn impair. 12/28/ 17 ADLs indic reminders not needed for pers care or taking meds; gen ADLs appear more neg than objective clin evict indics. The above support initial review's conclusions.

*Within the limitations specified above: Clmt can with some diff under, remem, & execute instructions. Clmt can with some diff sustain C,P,& P. Clmt can with some diff maintain social interaction. Clmt can with some diff adapt to work-like settings. Clmt retains sufficient MRFC for simple, routine work.*

R. 156–57 (emphasis added). The ALJ expressly considered Dr. Conneran's opinion, explaining

why he found it "partially persuasive," as follows:

The State agency psychological consultants opined that the claimant could perform simple, routine tasks (Exhibits 4A; 6A), with the consultant at Exhibit 4A also noting that the claimant could adapt appropriately to routine changes and with the consultant at Exhibit 6A also noting that the claimant has moderate social interaction limitations (Exhibits 4A; 6A).

The consultants supported their opinions with a discussion of the evidence available to them (Exhibits 4A; 6A). In terms of consistency, the undersigned notes, the opinion at Exhibit 4A suggesting a work place change limitation is inconsistent with the record. For example, despite symptoms, the claimant performs personal care activities and attends medical appointments, without reported difficulty in

29

planning these activities, avoiding normal hazards while pursing these activities (like avoiding cars while crossing a street) or dealing with changes (like a changed appointment time). (Exhibits 9E; 12E; Hearing Testimony). Further, the opinion at Exhibit 6A vaguely suggesting social interaction limitations is inconsistent with the record, including the record failing to reveal, upon exam, any noted abnormal exam findings in terms of cooperation, relation to the examiner, eye contact, or speech (Exhibits 1F-28F).

However, both opinions limiting the claimant to simple, routine tasks is consistent with the record. For example, while the psychological consultative exam revealed that the claimant was able to recall only one of three items after a delay and that she was not able to perform serial sevens or simple multiplication or division, this exam otherwise revealed a broad range of normal findings, as detailed at length above (Exhibit 8F). The record also revealed a conservative course of mental health treatment consisting of medication and a history of outpatient talk therapy in 2017 (Exhibits 1F-28F).

Therefore, in light of the opinion, the psychological consultants' opinions are only partially persuasive.

R. 41–42. In addition, as previously discussed, the ALJ further explained that "the limit to simple, routine tasks would result in the claimant having to concentrate, perform, or persist on a given task for shorter periods, as compared with the time required for tasks at a greater level of complexity in terms of concentrating, persisting or maintaining pace." R. 38. Moreover, at step three of the sequential evaluation, the ALJ found that Plaintiff had moderate limitations in the areas of, *inter alia*, concentrating, persisting, and maintaining pace, and explained how Plaintiff's activities and ability to function reflected some ability to, *inter alia*, pay attention and/or complete tasks, stating as follows:

In this matter, the claimant reported having a short attention span, not being able to finish what she starts, not following instructions well, not being able to manage finances, requiring reminders to go places and take medication, and not cooking or doing chores. However, she also reported graduating from high school, never being in any special education classes, having a driver's license, being able to pay bills, and not requiring reminders to take medication or to take care of personal needs. She further reported performing a wide variety of activities, including performing personal care activities, reading and watching television (albeit with concentration or memory issues), using a smartphone, and using a computer. (Exhibits 2E; 9E; 12E; Hearing Testimony). Significantly, the above activities demonstrate the ability

> to comprehend, learn, follow rules, understand, retain information for future use, focus, pay attention, and/or complete tasks. In addition, the claimant was able to participate at the hearing without any observed difficulty. For example, she was able to answer questions, including ones about her medical and employment history, in a clear and coherent manner. She also was observed to have no difficulties with understanding or maintaining her attention at the hearing.

R. 31; *see also* R. 31 (detailing no noted abnormal mental status findings in terms of thought processes, memory, attention, or concentration), 41 (implicitly rejecting opined limitations such as unscheduled breaks/time-off task or absences from work when finding that "the record failed to reveal that the claimant was as limited as otherwise opined" in the opinions of Dr. El Kadi and Ms. Polito). In other words, the ALJ pointed to the evidence supporting her finding that Plaintiff was moderately limited in the areas of understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself, and explained how the RFC adequately accounted for these limitations. R. 31, 41–42. In doing so, the ALJ rejected any additional or different RFC limitations, including limitations relating to time-off task/unscheduled breaks or absences from work. *Id.* Accordingly, considering this record as a whole, the ALJ sufficiently explained why the RFC limitation to simple, routine tasks adequately accommodated Plaintiff's moderate mental limitations, including her moderate limitation in the area of concentrating, persisting, or maintaining pace, and is not inconsistent with the ALJ's finding that Dr. Conneran's opinion is entitled to partial weight.

In continuing to challenge the RFC, Plaintiff complains that the RFC fails to account for Plaintiff's mild limitation in social functioning, and argues that "even non-severe impairments must be accounted for and here the ALJ failed to do so." *Plaintiff's Brief*, ECF No. 20, p. 27. The Court is not persuaded that this issue requires remand. As a preliminary matter, the ALJ expressly stated that she "has reviewed and *considered all severe and non-severe impairments in formulating the residual functional capacity* below, and, *where appropriate*, the undersigned has

included limitations to address the claimant's non-severe impairments and subjective complaints." R. 29 (emphasis added); *see also* R. 37 ("[T]his evidence, and the evidence set forth in the Finding Two discussion, *does not support the assessment of different or additional* [RFC] *limitations*. Additionally, the undersigned *accounted for the claimant's non-severe impairments*, subjective allegations (including, but not limited to, pain) and alleged medication side effects, as well as for the waxing and waning of fibromyalgia symptoms, when making this assessment.") (emphasis added); 39 ("Therefore, *taking into consideration the claimant's severe and non-severe impairments*, subjective allegations and alleged medication side effects, as well as the waxing and waning of fibromyalgia symptoms, *this evidence fully supports the assessed residual functional capacity. It does not support the assessment of different or additional limitations*.") (emphasis added). This Court has no reason to doubt that the ALJ in fact considered the combination of Plaintiff's severe and non-severe impairments and accounted for limitations flowing from those impairments "where appropriate" in the RFC. R. 29; *cf. Morrison ex rel. Morrison v. Comm'r of Soc. Sec.*, 268 F. App'x 186, 189 (3d Cir. 2008) ("The ALJ, however, explicitly indicated a number of times that he was considering the impairments in combination. . . . We see no reason not to believe him."). In addition, in light of the record reflecting, *inter alia*, normal examination findings, the ALJ expressly rejected any social interaction limitations in the RFC. R. 42 (finding state agency opinion "vaguely suggesting social interaction limitations is inconsistent with the record, including the record failing to reveal, upon exam, any noted abnormal exam findings in terms of cooperation, relation to the examiner, eye contact, or speech"). Accordingly, based on this record, the Court cannot conclude that the ALJ committed reversible error when crafting Plaintiff's RFC and considering mild limitations flowing from her mental impairments. *Cf. Ramirez v. Barnhart*, 372 F.3d 546, 555 (3d Cir. 2004) (noting that a

32

"valid explanation" for omitting a deficiency or limitation from the RFC exists where the deficiency or limitation is "so minimal or negligible that . . . it would not limit [the claimant's] ability" to perform required work functions); *D.C. v. Comm'r of Soc. Sec.*, No. CV 20-2484, 2021 WL 1851830, at *5–6 (D.N.J. May 10, 2021) ("[T]he Commissioner is correct that an RFC assessment does not need to contain in-depth analysis on mental impairments when the ALJ finds earlier in his opinion that a claimant's mental impairments are no greater than mild. . . . Thus, even if the ALJ's failure to analyze the mild mental limitations constituted an error, a dubious proposition, it still does not warrant reversal."); *Marchionna v. Comm'r of Soc. Sec.*, No. 13-329, 2015 WL 12550917, at *2 (W.D. Pa. Jan. 29, 2015) (finding "no error with respect to the failure to include social functioning limitations in the RFC" where the Plaintiff had only "mild difficulties" in social functioning and a medical opinion to which the ALJ assigned great weight found that "Plaintiff was not significantly limited in any area of social interaction or adaptation"); *Chandler v. Berryhill*, No. CV 16-4516, 2018 WL 3575258, at *6 (E.D. Pa. July 24, 2018) ("[C]ontrary to Plaintiff's argument, the ALJ was not required to include limitations in the RFC and hypothetical after concluding that Plaintiff had a 'mild' limitation in social functioning.") (citations omitted).

Finally, Plaintiff complains that "[t]he ALJ failed to consider a possible closed period of disability[,]" contending that "it appears" that her "disability continued after the total thyroidectomy" in September 2019 because medical records reflected that she "still was getting tired very easily and suffering from chronic pain." *Plaintiff's Brief*, ECF No. 20, p. 24; *see also Plaintiff's Reply Brief*, ECF No. 24, PAGEID ##1292–93. Plaintiff's argument is not well taken. As a preliminary matter, Plaintiff's argument that "it appears" that her disability continued after September 2019 is nothing more than rank speculation. Moreover, district courts in this circuit—

including this Court—have rejected similar arguments where, as in the present case, the claimant has not requested at the administrative level a "closed period" of disability determination, "submitted medical records spanning multiple years[,]" and "had argued disability since the pertinent onset date." *Demaske v. Berryhill*, No. 18-18, 2018 WL 6243221, at *2 (W.D. Pa. Nov. 29, 2018) (citing *Maslowski v. Colvin*, No. 15-1833, 2016 WL 1259967 (D.N.J. Mar. 31, 2016)); *see also* R. 264 (responding "no" to whether this was a closed period case); *Dilwara K. v. Comm'r of Soc. Sec*., No. CV 20-1557 (ES), 2022 WL 2357428, at *2 (D.N.J. June 30, 2022) ("This argument was not made to the ALJ, and it therefore is not a basis to disturb the ALJ's decision. . . . Plaintiff did not request a closed period of disability at any point prior to the ALJ's 2018 decision. . . . And '[a] claimant's failure to request consideration of a closed period of disability precludes the claimant from arguing on appeal to the district court that the ALJ erred by failing to consider the same.'") (citations omitted); *Ward v. Kijakazi*, No. CV 20-1315, 2021 WL 3037711, at *2 (W.D. Pa. July 19, 2021) ("I find that the ALJ did not err in failing to explicitly address a closed period of disability when that request was not made before the ALJ.") (citations omitted). In any event, as previously discussed, the ALJ already explained through citation to the medical record why Plaintiff was not disabled during the relevant period. R. 33–43.

     In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does her consideration of the opinions of Dr. El Kadi and Ms. Polito.

B.      **Subjective Statements**

Plaintiff also raises several challenges the ALJ's consideration of her subjective complaints. *Plaintiff's Brief*, ECF No. 20, pp. 28–33; *Plaintiff's Reply Brief*, ECF No. 24, PAGEID ##1294–95. For the reasons that follow, Plaintiff's arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 416.929(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or

other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 34–44. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 34. As previously discussed, the ALJ detailed years of medical evidence and record testimony to support her findings, noting, *inter alia*, generally conservative care and generally normal or minimal findings. R. 34–44. The ALJ went on to note that, "despite alleged symptoms, the waxing and waning of fibromyalgia symptoms, and alleged medication side effects, the record reveals a conservative course of mental health treatment and generally normal, with only minimal, findings. Further, the extent of the claimant's alleged limitations is

36

not entirely consistent with the same." R. 38. The ALJ further explained how Plaintiff's activities

and statements were not consistent with the extent of her alleged limitations, stating as follows:

> In addition, the claimant's actions and admissions are also not entirely consistent with the extent of her alleged limitations. For example, the claimant reported having bad days 3-4 times a month where she is not able to get out of bed, having pain and weakness upon personal care activity performance, using a non-prescribed shower chair, and not cooking or doing chores. She also reported that her mother helps her with hair care, drives her to appointments, and does the cooking and cleaning. She further reported having a short attention span, not being able to finish what she starts, not following instructions well, not being able to manage finances, and requiring reminders to go places and take medication. She additionally reported having problems dealing with others, that her ability to get along with authority figures depends on how she feels, going nowhere on a regular basis, not going to the movies or out to eat, and not handling stress or changes in routine well. (Exhibits 9E; 12E; Hearing Testimony).
>
> However, the claimant also reported graduating from high school, never being in any special education classes, being able to pay bills, not requiring reminders to take medication or to take care of personal needs, getting along very well with authority figures, never losing a job due to problems dealing with others, and having a significant other. She further reported performing a wide variety of activities, including performing personal care activities, reading and watching television (albeit with concentration or memory issues), using a smartphone, using a computer, using social media (Facebook), living with her mother without reported social interaction difficulty, spending time with others, spending time with her significant other every day, and attending doctor's appointments. (Exhibits 2E; 9E; 12E; Hearing Testimony). Simply stated, the claimant's actions and admissions reveal that she is not as limited as she alleged from a physical or mental health standpoint.

R. 38–39. The ALJ nevertheless specifically considered Plaintiff's subjective complaints,

including those related to her fibromyalgia, and included corresponding limitations, where

appropriate, when crafting the RFC. R. 29 ("[T]he undersigned has reviewed and considered all

severe and non-severe impairments in formulating the residual functional capacity below, and,

where appropriate, the undersigned has included limitations to address the claimant's non-severe

impairments and subjective complaints."), 33 ("The undersigned further considered fibromyalgia

consistent with SSR 12-2p."), 34 (considering, *inter alia*, Plaintiff's waxing and waning

fibromyalgia symptoms), 35–36 (considering subjective complaints from medical records and fibromyalgia symptoms), 37 ("[T]he undersigned accounted for the claimant's non-severe impairments, subjective allegations (including, but not limited to, pain) and alleged medication side effects, as well as for the waxing and waning of fibromyalgia symptoms, when making this [RFC] assessment."), 40 (considering subjective complaints from medical records), 43 ("In sum, the above residual functional capacity assessment is supported by the record, including objective findings, course of treatment, the claimant's actions and admissions, and the inconsistencies in the record with regard to the claimant's allegations."). In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

Plaintiff, however, contends that the ALJ improperly relied upon a "conservative" treatment history where "the ALJ also failed to consider that it would have been more extensive were it not for financial limitations." *Plaintiff's Brief*, ECF No. 20, pp. 30–31 (citations omitted). The Court is not persuaded that this issue requires remand. As a preliminary matter, Plaintiff's argument in this regard is speculative because she failed to take advantage of free healthcare treatment. For example, the ALJ specifically noted that "the record fails to reveal an ongoing, consistent course of outpatient talk therapy, which is a conservative form of treatment, *even at a free or community clinic*." R. 37 (emphasis added). Moreover, while Plaintiff points to, *inter alia*, reporting to her treating psychologist, Robbin Kay, Ph.D., on September 19, 2017, that she could no longer afford gas to attend appointments, *Plaintiff's Brief*, ECF No. 20, p. 31 (citing R. 590), a few days earlier on September 14, 2017, Plaintiff reported to the consultative examiner, Wm. Dennis Coffey, Psy.D., that she had been seeing Dr. Kay who "helps me a lot[,]" with no

mention of being unable to continue such appointments because of an inability to afford gas. R. 583–84. In any event, as discussed in detail above, conservative treatment was but one factor that the ALJ considered when considering Plaintiff's subjective complaints.

Plaintiff next complains that the ALJ did not properly consider Plaintiff's fibromyalgia and associated symptoms when discounting her subjective statements. *Plaintiff's Brief*, ECF No. 20, p. 31; *Plaintiff's Reply Brief*, ECF No. 24, PAGEID #1295. This Court disagrees. As previously discussed, the ALJ expressly considered Plaintiff's fibromyalgia and subjective statements and did not "disregard[]" Plaintiff's statements "solely due to their lack of substantiation by objective medical evidence[,]" *Plaintiff's Brief*, ECF No. 20, p. 31, as Plaintiff alleges. R. 29, 33–40. Notably, Plaintiff does not explain why the RFC does not accommodate any limitation that Plaintiff believes flows from her fibromyalgia, nor does Plaintiff identify any additional functional limitations not already included in the RFC purportedly flowing from her fibromyalgia. *See Plaintiff's Brief*, ECF No. 20, p. 31; *Plaintiff's Reply Brief*, ECF No. 24, PAGEID #1295. Plaintiff, who bears the burden at step four, *see Smith*, 631 F.3d at 634, simply has not established that the ALJ erred in considering Plaintiff's fibromyalgia when crafting the RFC. *See Pickerin v. Colvin*, No. 14-6130, 2016 WL 5745103, at *5 (D.N.J. Sept. 30, 2016) (affirming the ALJ decision where "Plaintiff does not offer any specific limitations that the ALJ should have included in the RFC assessment . . . [and b]ecause it is Plaintiff's burden to show that the ALJ's finding of residual functional capacity was not supported by substantial evidence, and Plaintiff has not identified any specific error").

Plaintiff goes on to assert, without elaboration, that the ALJ did not "properly evaluate the range of relevant factors pursuant to the regulations and SSR 16-3p." *Plaintiff's Brief*, ECF No. 20, p. 31. Plaintiff, who bears the burden of proof at step four, offers no substantive analysis

to support this conclusory assertion. *See id.* The Court therefore finds no merit in Plaintiff's undeveloped argument in this regard. *Cf Atkins*, 810 F. App'x at 129 ("Lacking any direction from [the claimant] as to the specific [evidence] at issue, we will not scour the record to attempt to discern [the claimant's] position."); *Wright v. Comm'r Soc. Sec.*, 783 F. App'x 243, 245 (3d Cir. 2019) ("We need not address this conclusory, undeveloped accusation.") (citations omitted).

Plaintiff also asserts that "treating and examining sources appeared to agree" that Plaintiff's "subjective complaints were credible and her symptoms were indeed debilitating." *Plaintiff's Brief*, ECF No. 20, p. 32. Plaintiff specifically argues that Andrew Sharobeem, D.O., noted on July 27, 2018, that Plaintiff "'is considered disabled from a rheumatological point of view[.]'" *Id.* (quoting R. 765 (Exhibit 16F/77)). Plaintiff also notes that, one year later, Michael Sullivan, M.D., M.H.S., "noted her continuing symptoms while expressing no doubts as to their severity or existence, and endorsed her decision to proceed with surgery." *Id.* (citing R. 1158 (Exhibit 25F/10)). Plaintiff further notes that Dr. Sullivan "later performed a total thyroidectomy" and argues that "[t]his evidence bears strongly on a relevant factor that should have been considered within the context of the ALJ's own evaluation of" Plaintiff's subjective complaints." *Id.* (citing R. 1162–64 (Exhibit 25F/14–16)).

Plaintiff's arguments are not well taken. While the ALJ did not specifically mention Dr. Sharobeem by name, the ALJ considered Dr. Sharobeem's records, including Plaintiff's cited note from July 27, 2018, throughout her decision, particularly when crafting the RFC. R. 28, 31, 32, 34–36, 38, 40–41. To the extent that Plaintiff suggests that the ALJ should have found Plaintiff disabled because of Dr. Sharobeem's statement of disability, whether or not Plaintiff is disabled is an issue reserved to the Acting Commissioner. *See Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 118 (3d Cir. 2020) ("Whether or not Louis can perform occupational duties is a legal

40

determination reserved for the Commissioner.") (citing 20 C.F.R. § 404.1527(d)); *cf. Zonak v. Comm'r of Soc. Sec.*, 290 F. App'x 493, 497 (3d Cir. 2008) ("[T]he ALJ was not obligated to give significant weight to Dr. Kumar's opinion as to Zonak's ability to work because the opinion related to the ultimate issue of disability—an issue reserved exclusively to the Commissioner.").

Plaintiff's reliance on Dr. Sullivan's records as a basis for remand is similarly unavailing. Contrary to Plaintiff's suggestion that the ALJ did not consider Plaintiff's thyroidectomy in September 2019, the ALJ expressly considered this procedure, which she noted "occurred without reported complication" R. 34; *see also* R. 35 (same), and further noted that pathology related to the thyroidectomy "merely showed 'mild' chronic lymphocytic thyroiditis with focal reactive atypia, without any signs of malignancy[.]" R. 36. To the extent that Plaintiff insists that this procedure establishes that the ALJ erred in considering Plaintiff's subjective statements, her argument boils down to nothing more than a disagreement with the ALJ's decision, which the Court has already explained is supported by substantial evidence. *See Perkins v. Barnhart*, 79 F. App'x 512, 514–15 (3d Cir. 2003) ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence.").

Finally, Plaintiff apparently argues that the ALJ erred in considering her daily activities when assessing her subjective statements because Plaintiff testified that she required the help of her mother and boyfriend. *Plaintiff's Brief*, ECF No. 20, pp. 32–33; *Plaintiff's Reply Brief*, ECF No. 24, PAGEID #1295. The Court is not persuaded this issue requires remand. The ALJ expressly noted that Plaintiff lives with her mother who helps Plaintiff with her hair, drives her to appointments, gives her reminders, and does the cooking, and cleaning. R. 27, 32, 38–39. The ALJ also considered that Plaintiff has a significant other with whom she spends every day. R. 27, 32, 39. Although Plaintiff apparently disagrees with the ALJ's consideration of this evidence, her

41

disagreement with the ALJ does not serve as a basis to reverse the ALJ's decision, which is supported by substantial evidence for the reasons already discussed. *See Perkins*, 79 F. App'x at 514–15. In any event, as previously discussed, the Court will not re-weigh the evidence and "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson*, 497 F. App'x at 201; *see also Messina*, 2021 WL 422444, at *3; *Chandler*, 667 F.3d at 359.

For all these reasons, the Court concludes that the ALJ sufficiently explained her reasoning in assessing Plaintiff's subjective complaints, and that the ALJ's findings in this regard are supported by substantial evidence in the record; they are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec*., 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec*., 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints cannot serve as a basis for remand of this action. *Id*.

VI.   **CONCLUSION**

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date:  February 28, 2023                          *s/Norah McCann King*
                                             NORAH McCANN KING
                                             UNITED STATES MAGISTRATE JUDGE

42